Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

PROPOSED ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| NOBLE REY BREWING CO, LLC | § | CASE 18-34214-11 |
| | § | |
| DEBTOR | § | |

**AMENDED DISCLOSURE STATEMENT OF NOBLE REY BREWING CO., LLC
PURSUANT TO SECTION 1125
OF THE BANKRUPTCY CODE DATED MARCH 4, 2019**

TO:   ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:

I
INTRODUCTION

Identity of the Debtors

Noble Rey Brewing Co, LLC,  ("Debtor") filed its voluntary Chapter 11 case in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Court") on December 19, 2018. The  Debtor is a craft brewing company. The Debtor proposes to sell all of its assets to provide a dividend to the unsecured creditors of Debtor.

**Purpose of Disclosure Statement; Source of Information**

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to

arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Amended Plan of Reorganization dated March 4, 2019 ("Plan"). This Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

### Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### Explanation of the Process of Confirmation

Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code.

Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**. Claimants in Class 1 and 2 are not impaired under the Plan. Such Classes is deemed to have accepted the Plan.

**Impaired Classes**. The Class 3 through 6 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 3 through 6. Each holder of an Allowed Claim in Classes 3 through 6 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas 75251. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

## Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive nothing. Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note: Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified. The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. A copy of the Plan is attached hereto as **Exhibit "A"**.]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtor, unless specifically stated to be from other sources.

**NO REPRESENTATIONS CONCERNING THE DEBTOR IS AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES. IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS**

**INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTORS ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.**

**DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.**

III

### FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtor

The Debtor was formed in 2014 for the purpose of opening a brewery under the name Noble Rey Brewing. Noble Rey produces beer at its brewery located in Dallas, Texas. The Debtor also maintains a tap room at the Dallas Farmers Market. The Debtor has been unable to establish a large enough distribution network to operate profitably. The Debtor has obtained loans and cash infusions but has determined that its current level of sales and financing will not allow it to maintain operations.

### Post Petition Operations

Since the filing of the bankruptcy, the Debtor has continued in the operation of its business. The Debtor has been able to operate, but is in need of a cash infusion to maintain operations.

### Future Income and Expenses Under the Plan

The Debtor will be selling all its assets under the terms of this Plan.

### Post-Confirmation Management

The Debtor is currently owned primarily by Chris Rigoulot and a number of smaller invertors.  If the Plan is approved all existing stock will be cancelled.

### IV.

### ANALYSIS AND VALUATION OF PROPERTY

The Debtor leases its facility and tap room in which it operates.  The Debtor has brewing equipment which it believes is worth $200,000. The Debtor's other assets consist of a small amount of furniture and inventory which the Debtor values at no more that $15,000.

A liquidation analysis of the Debtor's assets is attached hereto as **Exhibit "B".**

### V.
### SUMMARY OF PLAN OF REORGANIZATION

The Debtor will not continue in business. The Debtor's Plan will break the existing claims into 6 categories of Claimants. These claimants will receive cash payments over a period of time beginning on the Effective Date.

**Satisfaction of Claims and Debts**:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles 5 and 6 of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.  Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or as modified or amended as permitted herein.

**Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan.  Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of  Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000  including Section 1930

fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are not impaired and shall be satisfied as follows: The Allowed Ad Valorem Tax Creditor Claims shall be paid out of  the sales proceeds to Dallas County. Dallas County has filed a Proof of claim in the amount of $5,083.36 for business property taxes. The Ad Valorem Taxes will receive post-petition  pre-confirmation interest at the state statutory rate of 12% per annum and  post-confirmation interest at the rate of 12% per annum. The Debtor will pay the Ad Valorem Taxes on the Effective Date. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan. The Taxing Authorities shall retain their statutory lien rights for 2019 taxes.

Class 2 Claimants are not impaired under this Plan.

**Class 3 Claimants** (Allowed Secured Claim of Chase Bank) is impaired and shall be satisfied as follows: The Debtor executed that certain U.S. Small Business Administration Note dated September 30, 2014 in favor of JP Morgan Chase Bank ("Chase") in the original principal amount of $593,100 ("Note"). The Note was secured by a Commercial Security Agreement also dated September 30, 2014 granting Chase a security interest in certain equipment and other collateral more fully described in the Commercial Security Agreement ("Chase Collateral"). Chase properly perfected their interest by filing a UCC-1 with the Texas Secretary of State file number 14-0031586492. Chase has filed a Proof of Claim asserting a secured claim in the amount of $300,000 and an unsecured claim in the amount of $402,651.68. The Debtor would show that the value of the Chase Collateral is $200,000. The Debtor shall pay Chase $200,000 in the Effective Date in full satisfaction on the Chase Secured Claim. Chase shall have a Class 5 claim in the amount of $502,651.68.

The class 3 creditor is impaired under this Plan.

**Class 4 Claimants (Allowed Secured Claim of Ascentium Capital)** is impaired and shall be satisfied as follows: On or about March 10, 2017 the Debtor executed that certain Equipment Finance Agreement with Pinnacle Capital Partners ("Ascentium")[1] in the original principal amount of $133,356 for the purchase of that certain Yellow Jacket Auto-Can Depalletizer and a LinCan 35 Complete Servo Canning System ("Ascentium Collateral").  In November  2018, the Debtor sold the Ascentium Collateral. The Ascentium Claim shall be treated as a Class 5 creditor.

---

[1]Upon information and belief Pinnacle Capital Partners assigned its position on Ascentium Capital.

DEBTOR'S AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE DATED MARCH 4, 2019 - Page 7

The Class 4 creditor is impaired under this Plan.

**Class 5 Claimants (Allowed Unsecured Creditors)** are impaired and shall be satisfied as follows: the Class 5 creditors shall share pro rata in the unsecured creditors pool. The Debtor shall pay all remaining proceeds from the sale to the Class 5 creditors after payments to the Class 1, 2 and 3 creditors.

The Class 5 creditors are impaired.

**Class 6 Claimants (Equity Interest Holder Claims)** are impaired and shall be satisfied as follows: All Allowed Equity Interest Holder Claims shall have their interests cancelled as a result of this Plan.

The 6 Claimants are impaired under the Plan.

## ARTICLE VI
## MECHANICS/IMPLEMENTATION OF PLAN

Debtor anticipates the sale of all its assets to fund the Plan.

The Debtor shall offer for purchase to the highest bidder, the sale of all of its assets, including, equipment, inventory, goodwill, leases, logos, intellectual property, websites and all other assets of the Debtor (collectively "Assets"). The Debtor has received an offer to purchase the Assets from Lonestar Liquid Assets, LLC and Craft Food and Beverage Equipment LLC (collectively "Purchaser") the amount of $300,000.[2] Any person or entity desiring to purchase the Assets must inform counsel for the Debtor and counsel for Purchaser in writing of its desire to purchase the Assets, at least 7 days prior to the date first set for confirmation of Debtor's Plan. In the event one or more notices of desire to bid are received, an auction for the sale of the Assets will be conducted at the offices of counsel for the Debtor, Eric A. Liepins, P.C., 12770 Coit Road, Suite 1100, Dallas, Texas 75251 in five business days from the date of confirmation of Debtor's Plan. Any auction bid must start at $325,000 and the auction will continue in increments of $5,000 until a high bid is determined. In the event the Debtor receives such a bid, Purchaser shall be entitled to reimbursement of its reasonable and necessary expenses attendant to conducting due diligence on the Debtor, including, without limitation, attorneys fees and appraisal costs, plus 3% of the final sales price for the Assets. The winning bidder shall have two business days to place the winning bid funds in escrow with counsel for the Debtor. The Assets shall be transferred upon confirmation of the Debtor's Plan.

---

[2]The proposed sale to Purchaser also provides that Christopher Rigoulot will be employed through the end of 2019 at a salary of $45,000.

A fundamental component of the Debtor's Plan is the sale of the Debtor's Assets. The confirmation of this Plan shall serve as a Court finding that the Debtor has determined in the exercise of their reasonable business judgment to sell its Assets. Debtor has demonstrated good, sufficient and sound business reasons and justification for the Assets as requested in the Plan. The sale of the Assets, under Section 363(b) and (f) of the Bankruptcy Code and this Plan is in the best interests of the Debtor, its estate and its creditors. The consideration to be paid constitutes adequate and fair value for the Debtor's interest in the Assets. The sale of the Assets was negotiated and entered into in good faith and from arm's-length positions between the Debtor and the purchaser. The purchaser of the interest in the Assets is a good faith purchaser as that term is used in Section 363(m) of the Bankruptcy Code.

As a component of the confirmation of this Plan, the sale of the Debtor's Assets is approved. Pursuant to Section 363 of the Bankruptcy Code, and subject to the terms and conditions set out in the Confirmation Order, the Debtor is authorized to sell its Assets free and clear of all liens, interests, claims and encumbrances. The parties are authorized and directed to take all actions, including the execution of documents, necessary or appropriate to affect the sale of the Debtor's interest in the Assets.

As part of the sale of the Assets, the Debtor is assuming and assigning its current leases at the 2636 Farrington Street, Dallas Texas and the Dallas Farmers Market. The Debtor and Purchaser will evaluate the Debtor's other executory contracts and unexpired leases to identify any such contract or lease that the Debtor proposes to assume and assign in accordance with the terms of the Plan. The Debtor shall be required to cure any defaults related to the assumption and assignment of such leases and/or contracts whether such cure is undisputed or determined on a final basis by the Court, form the proceeds of the sale of Assets.

The Court shall retain exclusive jurisdiction to address any and all matters related to the sale of the Debtor's interest in the Assets and the provisions of the Confirmation Order. The purchaser is afforded the protections of a good faith purchaser under Section 363(m) of the Bankruptcy Code. The Confirmation Order as to the sale is final and shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Bankruptcy Rule 6004(g)

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.

## VII.
## FEASIBILITY OF PLAN

The Debtor is not continuing in business as part of the Plan.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article XIV of the Plan.

## IX.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Generally, a liquidation or forced sale yields a substantially lower amount. As set forth above, the Debtor owes approximately $700,000 in secured and tax claims. Claims to the secured and tax creditors must be paid prior to the unsecured creditors receiving any payment. The Debtor believes in a forced sale, the value of the assets would not exceed the administrative claims, secured and tax creditor debts, and therefore, a liquidation would result in no distribution to the unsecured creditors.

A liquidation analysis is attached hereto as Exhibit "C".

## X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that the Debtor is not continuing in business under this Plan.

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. In this case most of the creditors will not be paid in full the amount of their claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

## XII.
## PENDING OR ANTICIPATED LITIGATION

The Debtor has evaluated potential claims which may be brought. The Debtor is unaware of any litigation which could be brought for the benefit of the creditors of the estate.

Dated: March 4, 2019.


Respectfully submitted,

Noble Rey Brewing Co., LLC.

 _/s/ Chris Rigoulot_____
By: Chris Rigoulot
Its: Managing Member




LIQUIDATION ANALYSIS - EXHIBIT B


| ASSETS | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| EQUIPMENT | 100,000[3] | 200,000 |
| INVENTORY | 10,000 | 15,000 |
| total | 110,000 | $215,000 |
| LIABILITIES | | |
| ADMINISTRATIVE | 15,000 | 15,000 |
| TAXES | 5,000 | 5,000 |
| SECURED CLAIMS | 700,000 | 200,000 |
| UNSECURED | 440,000 | 1,000,000 |
| Dividend to unsecured | 0% | 5% |

---

[3]Debtor bases this value on the belief that the secured creditors would foreclose on the equipment and it would have to be removed from the building.