Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| NOBLE REY BREWING CO, LLC | § | CASE 18-34214-11 |
| | § | |
| DEBTOR | § | |

**AMENDED PLAN OF REORGANIZATION OF NOBLE REY BREWING CO., LLC DATED MARCH 4, 2019**

**TO: ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Noble Rey Brewing Co, LLC, Debtor and Debtor-in-Possession in the above-referenced bankruptcy case, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 6 separate classes.

## ARTICLE I
**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1. "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. **"Allowed Claim"** as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. **"Allowed Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. **"Allowed Unsecured Claim"** shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. **"Assets"** shall mean all equipment, inventory, goodwill, assumed leases, logos, intellectual property, websites and all other assets of the Debtor.

6. **"Bar Date"** shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

7. **"Case"** shall mean this Chapter 11 case.

8. **"Claim"** shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

9. **"Claimant"** shall mean the holder of a Claim.

10. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

11. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

12. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

13. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

14. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

15. "**Creditor**" shall mean any person having a Claim against Debtor.

16. "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

17. "**Debtor**" shall mean Noble Rey Brewing Co., LLC.

18. "**Disbursing Agent**" shall mean the Reorganized Debtor.

19. "**Effective Date**" shall mean thirty days after the Final Confirmation Date.

20. "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

21. "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

22. "**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

23. "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

24. "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, December 19, 2018.

25. "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

26. "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a) of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

27. "**Purchaser**" shall initially mean the highest bidder for Debtor's Assets approved by the Court.
Beverage Equipment LLC,

28. "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

29. "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtor's assets and liabilities upon confirmation as provided herein.

30. "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

31. **Schedule of Additional Assumed Leases & Contracts**" shall mean that certain schedule to be filed and served on counter-parties to unexpired leases and executory contracts with the Debtor no later than fourteen (14) days prior to the Confirmation Hearing that specifically designates certain executory contracts and/or unexpired leases as contracts or leases to be assumed pursuant to the Plan and the proposed cure amounts thereto.

32. "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

33. "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

34. "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1  Claims and Debts: Various types of Claims and Debts are defined in this Plan. This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a)

of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan. Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2     **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3     **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants must file a proof of claim bearing the case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4     **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1     All trade and service debts and obligations, including ad valorem taxes for year 2019, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2     Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1     Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2 **Class 1**: Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)
**Class 2**: Consists of **Allowed Property Tax Claims** (Not Impaired)
**Class 3**: Consists of **Allowed Secured Claim of Chase Bank** (Impaired)
**Class 4:** Consists of **Allowed Claim of Ascentium Capital** (Impaired)
**Class 5:** Consists of **Allowed Unsecured Claims** ( Impaired)
**Class 6**: Consists of **Allowed Equity Holder Interests** (Impaired)

# ARTICLE 5
# TREATMENT OF CLASSES

5.1   Satisfaction of Claims and Debts:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

5.2   **Class 1 Claimants (Allowed Administrative Claims of Professionals and US Trustee)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. This case will not be closed until all allowed Administrative Claims are paid in full.  Class 1 Creditor Allowed Claims are estimated as of the date of the filing of this Plan to not exceed the amount of $15,000 including Section 1930 fees.  Section 1930 fees shall be paid in full prior to the Effective Date.  The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall required to file post-confirmation operating reports until this case is closed.

The Class 1 Claimants are not impaired under this Plan.

5.3   **Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are not impaired and shall be satisfied as follows: The Allowed Ad Valorem Tax Creditor Claims shall be paid out of the sales proceeds to Dallas County. Dallas County has filed a Proof of claim in the amount of $5,083.36 for business property taxes. The Ad Valorem Taxes will receive post-petition pre-confirmation interest at the state statutory rate of 12% per annum and post-confirmation interest at the rate of 12% per annum. The Debtor will pay the Ad Valorem Taxes on the Effective Date. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan. The Taxing Authorities shall retain their statutory lien rights for 2019 taxes.

Class 2 Claimants are not impaired under this Plan.

5.4     **Class 3 Claimants** (Allowed Secured Claim of Chase Bank) is impaired and shall be satisfied as follows: The Debtor executed that certain U.S. Small Business Administration Note dated September 30, 2014 in favor of JP Morgan Chase Bank ("Chase") in the original principal amount of $593,100 ("Note"). The Note was secured by a Commercial Security Agreement also dated September 30, 2014 granting Chase a security interest in certain equipment and other collateral more fully described in the Commercial Security Agreement ("Chase Collateral"). Chase properly perfected their interest by filing a UCC-1 with the Texas Secretary of State file number 14-0031586492. Chase has filed a Proof of Claim asserting a secured claim in the amount of $300,000 and an unsecured claim in the amount of $402,651.68. The Debtor would show that the value of the Chase Collateral is $200,000. The Debtor shall pay Chase $200,000 in the Effective Date in full satisfaction on the Chase Secured Claim. Chase shall have a Class 5 claim in the amount of $502,651.68.

The class 3 creditor is impaired under this Plan.

5.5     **Class 4 Claimants (Allowed Secured Claim of Ascentium Capital)** is impaired and shall be satisfied as follows: On or about March 10, 2017 the Debtor executed that certain Equipment Finance Agreement with Pinnacle Capital Partners ("Ascentium")[1] in the original principal amount of $133,356 for the purchase of that certain Yellow Jacket Auto-Can Depalletizer and a LinCan 35 Complete Servo Canning System ("Ascentium Collateral"). In November 2018, the Debtor sold the Ascentium Collateral. The Ascentium Claim shall be treated as a Class 5 creditor.

The Class 4 creditor is impaired under this Plan.

5.6     **Class 5 Claimants (Allowed Unsecured Creditors)** are impaired and shall be satisfied as follows: the Class 5 creditors shall share pro rata in the unsecured creditors pool. The Debtor shall pay all remaining proceeds from the sale to the Class 5 creditors after payments to the Class 1, 2 and 3 creditors.

The Class 5 creditors are impaired.

5.7     **Class 6 Claimants (Equity Interest Holder Claims)** are impaired and shall be satisfied as follows: All Allowed Equity Interest Holder Claims shall have their interests cancelled as a result of this Plan.

The 6 Claimants are impaired under the Plan.

---

[1] Upon information and belief Pinnacle Capital Partners assigned its position on Ascentium Capital.

# ARTICLE 6
## MEANS FOR EXECUTION OF THE PLAN

6.1 **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2 **Ongoing Operations:** The Debtor's will not have any ongoing operations under this Plan.

6.3 **Sale of Assets**: A fundamental component of this Plan is the sale of the Debtor's Assets as described in the Disclosure Statement. The confirmation of this Plan shall serve as a Court finding that the Debtor has determined in the exercise of their reasonable business judgment to sell its Assets. The Debtor has demonstrated good, sufficient and sound business reasons and justification for the sale of its Assets as requested in the Plan. The sale of the Assets, under Section 363(b) and (f) of the Bankruptcy Code and this Plan is in the best interests of the Debtor, its estate and its creditors. The consideration to be paid constitutes adequate and fair value for the Debtor's Assets. The sale of the Assets was negotiated and entered into in good faith and from arm's-length positions between the Debtor and the Purchaser. The purchaser of the Assets is a good faith purchaser as that term is used in Section 363(m) of the Bankruptcy Code.

6.4 **Sale Order**: As a component of the confirmation of this Plan, the sale of the Debtor's Assets is approved, subject to the conditions set forth in the Disclosure Statement and this Plan. Pursuant to Section 363 of the Bankruptcy Code, and subject to the terms and conditions set out in the Confirmation Order, the Debtor is authorized to sell its Assets free and clear of all liens, interests, claims and encumbrances. More specifically, this Court orders that except as expressly provided for in this Order pursuant to section 105(a) and 363(f) of the Bankruptcy Code, as of the Closing Date, the Debtor shall transfer and Purchaser and/or assigns shall take title to and full possession of the Assets free and clear of all interests to the fullest extent permitted by 11 U.S.C. Section 363(f) (whether consensual, statutory, possessory, judicial or otherwise).

It is further Ordered that all of the above enumerated Claimants, and all other interest, liens, encumbrances and causes of action, including the liens held by Class 2 Claimants, Class 3 Claimants and Class 4 Claimants shall, upon the Closing Date be cured, released and extinguished as against the Assets, but shall immediately attach to the proceeds.

In connection with this sale, the Court makes the following findings:

a) The Court finds that the Assets identified herein were listed on the Debtor's bankruptcy schedules;
b) The Court finds the Debtor and Purchaser have acted in good faith. This Court specifically finds that the Purchaser is a good faith Purchaser as defined by 11 U.S.C. Section 363 and is entitled to all protections and rights afforded thereby.
c) The Court finds that the Debtor is the owner of the Assets. The conveyance of the Assets will be a legal, valid, and effective transfer of the Assets and vests

or will vest Purchaser, upon the Closing Date, with all right, title and interest of the Debtor to the Assets free and clear of all interests to the fullest extent permitted under 11 U.S.C. § 363 (including 363(f)) (whether consensual, statutory, possessory, judicial or otherwise).

The parties are authorized and directed to take all actions, including the execution of documents, necessary or appropriate to affect the sale of the Debtor's Assets. Upon the Closing Date, the monies held in escrow shall be released to the Debtor and shall be held pending further Order of this Court on the disbursement of those funds.

The Court shall retain exclusive jurisdiction to address any and all matters related to the sale of the Debtor's Assets and the provisions of the Confirmation Order. The Purchaser is afforded the protections of a good faith Purchaser under Section 363(m) of the Bankruptcy Code. The Confirmation Order as to the sale is final and shall be effective and enforceable immediately upon entry and shall not be stayed pursuant to Bankruptcy Rule 6004(g).

6.5     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

6.6     Purchaser is not a continuation of the Debtor. Purchaser is not holding itself out to the public as a continuation of the Debtor. There is no substantial continuity between Purchaser and the Debtor, and there is no continuity of enterprise between Purchaser and the Debtor. Purchaser is not, as a result of any action taken in connection with the purchase of the Assets or otherwise, successor to the Debtor and has not, de facto or otherwise, merged or consolidated with or into any of the Debtors. Purchaser shall not have any obligation, as successor or otherwise, under any theory of law or equity, including, without limitation, successor or vicarious liability, to any claimant against the Debtor, including, without limitation, any claims arising from: employment or labor agreements to which the Debtor is a party; employee benefit programs for the benefit of Debtor's employees; cessation of the Debtor's operations; dismissal of its employees; environmental successor or transferee liability; alter ego theories; de facto merger or substantial continuity, whether known or unknown as of the Confirmation Date; bulk sales laws; taxes; or litigation. Purchaser has given substantial good and valuable consideration in exchange for the forgoing. Purchaser is a party in interest and shall be entitled to be heard on all issues in this Case related to the sale of the Assets, the Plan, the transactions contemplated therein, and the implementation and enforcement of the Order Confirming Plan.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it. The requirements for confirmation of a plan over the objection of one or

more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

# ARTICLE 8

## STATUS OF EXECUTORY CONTRACTS

    8.1    **Assumption and Rejection of Executory Contracts and Unexpired Leases:**

The Debtor hereby assumes the executory contracts and unexpired leases described on the Schedule of Additional Assumed Leases & Contracts, including the Debtor's unexpired leases of nonresidential real property located at 2636 Farrington Street, Dallas, Texas and the Dallas Farmers' Market, and assigns such executory contracts and unexpired leases to Purchaser pursuant to Sections 363 and 365 of the Bankruptcy Code and the Order Confirming Plan. The assumption or assumption and assignment of the contracts and leases pursuant to the Plan is in the best interest of the Debtor and its estate, its creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. Purchaser and the Debtor have provided good and sufficient evidence of adequate assurance of Purchaser's future performance. The cure costs, if any, stated in the Schedule of Additional Assumed Leases & Contracts with respect to each contract and lease identified therein are the sole amounts necessary to cure all defaults and pay all actual pecuniary losses under such contracts and leases. To the extent not (i) assumed in the Case prior to the Confirmation Date, (ii) rejected in the Case prior to the Confirmation Date, (iii) subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date, or (iv) specifically assumed pursuant to this Plan, each executory contract and unexpired lease to which the Debtor is a party is specifically rejected by the Debtor as of and subject to the occurrence of the Effective Date pursuant to the Plan.

    8.2    **Cure**

The Debtor or Reorganized Debtor, except as otherwise agreed by the parties, will pay any amounts necessary to cure undisputed defaults under any executory contract or unexpired lease that is assumed by such Reorganized Debtor pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. In the event there is a dispute as of the Effective Date regarding the amount required to cure defaults under any executory contract or unexpired lease that the Reorganized Debtors propose to assume, the Reorganized Debtor shall have until thirty (30) days after entry of a final order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed by the parties, to determine whether to assume or reject the related executory contract or unexpired lease. In the event the Reorganized Debtor determines to assume or assume and assign the applicable executory contract or unexpired lease related to the disputed cure, such disputes shall be cured either within thirty (30) days of the entry of a final order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

    8.3    **Rejection Damage Claims**

All Claims for damages arising from the rejection of executory contracts or unexpired leases must be filed with the Court in accordance with the terms of the order authorizing such

rejection and any applicable bar dates established during the case, but in no event later than thirty (30) days after the Effective Date (unless rejected at a later date as a result of a disputed cure amount as set forth in Article 8.C herein). Any Claims not filed within such time will be forever barred from assertion against the Debtor, the Reorganized Debtor, or the bankruptcy estate. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as Unsecured Claims

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor. The Debtor shall be entitled to no more than two (2) notices of default during the live of the Plan.

## ARTICLE 10
## DISCHARGE

10.1     Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2     The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

10.3     NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, DEBTOR, REORGANIZED DEBTOR, GUARANTORS, THE OFFICERS SHAREHOLDERS AND DIRECTORS OF THE DEBTOR SHALL BE DISCHARGED AND RELEASED FROM ANY LIABILITY FOR CLAIMS UNDER THIS PLAN.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1     Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2     In the event of modification of this Plan pursuant to Section 11.1, any holder of a

Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1    The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2    All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3    All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4    All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1    The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2    Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3    Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4    Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1    To direct any necessary party to execute or deliver or to join in the execution or

delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

  14.2 To allow or disallow Claims.

  14.3 To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

  14.4 To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

  14.5 To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

  14.6 To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

  14.7 To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

  14.8 To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

  14.9 To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

  14.10 To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

  14.11 To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan before Substantial Consummation as defined herein.

  14.12 To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

  14.13 To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

  14.14 To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

        Respectfully submitted,

        Noble Rey Brewing Co., LLC.


        __/s/ Chris Rigoulot__
        Chris Rigoulot
        Its: Managing Member

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier